IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * |
| PATRICK BELZNER, | *  Crim. No. JKB-12-103 |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Before the Court is Patrick Belzner's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2). (ECF No. 451.) The Federal Public Defender has supplemented that Motion (ECF Nos. 453, 462) and the Government has opposed it (ECF No. 461). Belzner requests that his sentence be reduced to, effectively, time served. (ECF No. 462 at 1.) For the reasons below, the Motion will be granted in part and the Court will reduce Belzner's sentence to 161 months.

## I. BACKGROUND

On April 21, 2014, Belzner pled guilty to Count 1 (conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349), Count 32 (wire fraud in violation of 18 U.S.C. § 1343), and Count 45 (evasion of assessed tax payments in violation of 26 U.S.C. § 7201) of the Superseding Indictment. (ECF Nos. 140, 141.) He admitted to conspiring "to defraud investors in Maryland through a fraudulent investment scheme." (ECF No. 141 at 12.) The investor victims would place funds in escrow accounts after which Belzner directed co-conspirators to "remove those funds from the escrow accounts without the knowledge or permission of the victim investors." (*Id.* at 13.) Belzner and his co-conspirators "used the majority of the stolen funds to pay for their personal

and business expenses." (*Id.*) Belzner also engaged in various acts "in order to conceal his income and assets with the intent to evade and defeat the IRS's efforts to collect the assessed taxes, penalties and interest owed by him." (*Id.* at 20.)

At sentencing, Belzner's total offense level was 31, and his criminal history category was V. (ECF No. 176 at 13–15.) The criminal history category was, in part, based on the fact that Belzner had two "status points," or two additional criminal history points because he committed the instant offense while on probation for another offense. (*Id.* at 15.) Based on this, the applicable range was 168 to 210 months. (*Id.*) Judge Motz sentenced Belzner to 180 months incarceration, a sentence in the bottom half of the range, and 3 years of supervised release. (*See* ECF No. 219.)

## II. ANALYSIS

On November 1, 2023, Amendment 821 to the U.S. Sentencing Guidelines went into effect, lowering Guidelines ranges for some defendants. The Amendment was given retroactive effect. As is relevant here, Part A of Amendment 821 limits the criminal history impact of "status points." Specifically, under Part A, a defendant's status points are decreased by one if he has seven or more criminal history points, and his status points are eliminated if he has six or fewer criminal history points. Belzner had more than seven criminal history points, as well as two status points. (ECF No. 176 at 15.) Accordingly, pursuant to Amendment 821, his status points should be decreased by one. This would move Belzner from a criminal history category of V to a criminal history category of IV, changing the applicable range to 151 to 188 months. (ECF No. 451 at 7.) The Government concedes that Amendment 821 applies to Belzner and that he is eligible for a sentence reduction. (ECF 461 at 9.)

If a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" then the Court "may reduce

2

the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(2).

Considering the § 3553(a) factors, a sentence reduction is appropriate in these circumstances. The § 3553(a) factors require the Court to impose "a sentence sufficient, but not greater than necessary," after considering, as relevant here, (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to, *inter alia*, reflect the seriousness of the offense, promote respect for the law, deter criminal conduct, and protect the public, (3) applicable Sentencing Guidelines, (4) any pertinent policy statement issued by the Sentencing Commission, (5) the need to avoid unwarranted sentencing disparities, and (6) the need to provide restitution to any victims.

Turning first to the nature and circumstances of the offense, Belzner's offense was undoubtably serious. He and his co-conspirators stole almost $20 million dollars from various individuals and entities and inflicted financial ruin on some investors. (*See* ECF No. 461 at 10–12.) However, Belzner's crimes were indisputably nonviolent, somewhat mitigating their relative seriousness. *See United States v. Smith*, Crim. No. JKB-12-479, 2024 WL 733221, at *2 (D. Md. Feb. 21, 2024) ("[N]on-violent crimes are less serious than violent crimes.")

Regarding Belzner's history and characteristics, unlike many of the criminal defendants who come before this Court, Belzner did not have an upbringing defined by trauma, neglect, or deprivation, which might offer some form of mitigating explanation for his choices. Further, this was not Belzner's first fraud-related conviction, indicating a concerning pattern. (ECF No. 461 at 14–15.) At best, Belzner seems to have been, as described by his own counsel, a "serial deadbeat" who lied and manipulated those around him for his own gain and to feed his own addictions. (ECF

3

No. 461-2 at 44–45.) At worst, by the Government's characterization, Belzner's actions "reflected a sociopathic indifference to the devastating consequences of his actions upon others." (ECF No. 461 at 15.)

Today, however, Belzner is, by the Bureau of Prison's estimation, "a model inmate." (ECF No. 451-4 at 4.) He is a "minimum risk offender" who serves as a suicide watch companion. (ECF No. 453 at 2–3.) He has a "flawless" disciplinary record. (ECF No. 462 at 1.) Further, Belzner has completed drug abuse treatment programs, and now serves as a senior guide for new program participants. (ECF No. 453 at 2.) Such post-sentencing rehabilitation is "highly relevant" to the § 3553(a) analysis. *See Pepper v. United States*, 562 U.S. 476, 491 (2011). This strong evidence of rehabilitation weighs in favor of a sentence reduction.

The Government contends that the Court should discount or ignore this evidence of significant rehabilitation, arguing that Belzner is "among the most unredeemable and dangerous fraudsters this District has seen in many years," "almost demonic," and "sociopathic." (ECF No. 461 at 2–3, 15.) Hyperbole aside, the Government's arguments are unavailing. The Government largely relies on precedent holding that rehabilitation alone is not a sufficiently "extraordinary and compelling circumstance" to support a reduced sentence. (*Id.* at 16.) But this precedent is inapplicable here, because the existence of "extraordinary and compelling circumstances" is necessary for a sentence reduction under the compassionate release provision, not for a sentence modification under 18 U.S.C. § 3582(c)(2).

Turning to the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, deter criminal conduct, and protect the public, the 161-month sentence that the Court will impose is a lengthy one. A more than thirteen-year sentence is sufficient (but not greater than necessary) to reflect the seriousness of Belzner's fraud, encourage him and others

4

to respect the law, deter both him and others from such criminal conduct, and protect the public. Spending more than a decade of one's life in prison is unquestionably significant, and the Court is confident that such a lengthy sentence is enough to deter both Belzner and others from engaging in further fraud. That deterrence operates to protect the public. Considering all of the submissions, the Court does not believe that further detention is necessary to dissuade Belzner; the marginal difference of an additional 19 months is not sufficiently impactful to be necessary to serve the goals of § 3553(a).

Both the applicable guidelines and applicable policy statements weigh in favor of the 161-month sentence. As discussed above, Amendment 821 modifies the sentencing range applicable to Belzner, a sentencing range that unquestionably impacted Judge Motz at sentencing. (*See* ECF No. 461-2 at 54.) Judge Motz concluded that a sentence in the middle of the range would be appropriate at that time, and a sentence in the middle of the revised range is appropriate today. (*Id.*) Further, Amendment 821 reflects a considered conclusion by the U.S. Sentencing Commission that "status points add less predictive value to the criminal history score than the original Commission may have expected."[1]

Lastly, the Court does not find either the need to avoid sentencing disparities or the need to provide restitution to any victims particularly relevant in this circumstance. The Court notes that that Government did not find any of the § 3553(a) factors other than the first particularly relevant. (ECF No. 461 at 18–19 ("After what we have already set forth above about the nature and circumstances of the defendant's crimes and his personal history and characteristics, there is little need for additional comment as to these other § 3553(a) factors.").) The Court does note that Belzner's co-defendants were each sentenced to 60 months of imprisonment in total, less than half

---

[1] https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821R.pdf.

the sentence that the Court today concludes is sufficient but not great than necessary for Belzner. (*See* ECF Nos. 226, 250.) However, without additional information or argument regarding the co-conspirator's relative roles in the scheme, the Court is reluctant to make findings regarding potential disparities. And, while Belzner has apparently been making restitution payments from prison (ECF No. 453 at 2), the Court assumes that he will be able to find more lucrative employment outside prison and presumably thereby be able to make larger payments.

### III. CONCLUSION

For the reasons stated herein, it is ORDERED that:

1. The Defendant's Motion to Reduce Sentence (ECF Nos. 451, 453) is GRANTED in part; and

2. An Amended Judgment WILL ISSUE, reducing the Defendant's sentence to a term of imprisonment of 161 months to be followed by three years of supervised release.

DATED this 17 day of May, 2024.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
United States District Judge

6